UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| EDDIE CALDWELL,<br><br>Plaintiff,<br><br>v.<br><br>INDIANA STATE PRISON, KRUPAR,<br><br>Defendants. | CAUSE NO. 3:26-CV-1583-PPS-AZ |

OPINION AND ORDER

Eddie Caldwell, a prisoner without a lawyer, filed a complaint. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, I must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

Caldwell has been incarcerated in the segregation unit at the Indiana State Prison (ISP) since November 2023. He was diagnosed with "severe depression" at an early age which has resulted in self-mutilation and suicidal ideation. ECF 1 at 2. At some point, officials within the Indiana Department of Correction categorized him with "mental health code (C) which requires [him] to be routinely monitored by staff." *Id.* He has been placed on suicide watch several times. For the past four to six months, Caldwell

claims there have been no "clinically licensed" mental health staff at ISP to help him with his issues. *Id.* at 3. He says the Warden has recently assigned staff to do "routine checks" on the prisoners, but Caldwell claims they are of no help. *Id.* According to Caldwell, they're only there to report the conditions "to mental health staff down state." *Id.* Since his arrival at ISP in 2023, Caldwell claims ten inmates have committed suicide. *Id.* He is "worried" for his own life. *Id.* He has sued the Indiana State Prison and Warden Krupar seeking monetary damages and to be "properly helped" for his mental health issues. *Id.* at 4.

Inmates are entitled to constitutionally adequate medical care for serious medical conditions. *Thomas v. Blackard*, 2 F.4th 716, 722 (7th Cir. 2021). To establish liability under the Eighth Amendment, a prisoner must show: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). "Deliberate indifference occupies a space slightly below intent and poses a 'high hurdle and an exacting standard' requiring 'something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'" *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 615 (7th Cir. 2022) (quoting *Donald v. Wexford Health Sources, Inc.*, 982 F.3d 451, 458 (7th Cir. 2020)); *see also Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (stating that deliberate indifference claims will fail absent evidence of "callous disregard" for inmate wellbeing).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to

demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). As the Seventh Circuit has explained:

> [M]edical professionals are not required to provide proper medical treatment to prisoners, but rather they must provide medical treatment that reflects professional judgment, practice, or standards. There is not one proper way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field. A medical professional's treatment decisions will be accorded deference unless no minimally competent professional would have so responded under those circumstances.

*Id.* at 697–98. Put another way, inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997); *see also Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("The Eighth Amendment does not require that prisoners receive unqualified access to health care."). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267.

Accordingly, deference must be given "to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Walker*, 940 F.3d at 965 (citation and quotation marks omitted). This standard "reflects the reality that there is no single 'proper' way to practice medicine in a prison, but rather a range of acceptable courses based on prevailing standards in the field." *Lockett v. Bonson*, 937 F.3d 1016, 1023 (7th Cir. 2019) (citation and internal quotation marks omitted). Additionally, it is not enough that a medical professional be mistaken in his or her judgment. As noted above, the deliberate indifference standard requires a something "akin to criminal recklessness,"

*Thomas*, 2 F.4th at 722, rather than "negligence, gross negligence, or even recklessness . . . ." *Hildreth v. Butler*, 960 F.3d 420, 425–26 (7th Cir. 2020). Ignoring an inmate's complaints of pain or delaying necessary treatment can amount to deliberate indifference, particularly where the delay "exacerbates an inmate's medical condition or unnecessarily prolongs suffering." *Goodloe v. Sood*, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and quotation marks omitted).

With regard to non-medical prison officials, they generally don't violate the Constitution it they "reasonably relied on the judgment of medical personnel." *Eagan v. Dempsey*, 987 F.3d 667, 694 (7th Cir. 2021) (quoting *Miranda v. Cnty. of Lake*, 900 F.3d 335, 343 (7th Cir. 2018)). While prison officials are "presumptively entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care[,]" they may not ignore a prisoner's complaints entirely or refuse to act if they know the medical staff is failing to treat the prisoner. *Id.* (internal quotation marks and citations omitted). But "mere negligence in failing to detect and prevent subordinates' misconduct is not sufficient." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011).

As an initial matter, I note that Caldwell can't sue the Indiana State Prison for monetary damages. This building is an arm or entity of Indiana Department of Correction. As such, it's not a proper defendant because a state agency isn't a "person" that can be sued for constitutional violations under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64–66, 70–71 (1989); *see also de Lima Silva v. Dep't of Corr.*, 917

F.3d 546, 565 (7th Cir. 2019) (holding any claim for damages against the Wisconsin DOC would be barred by the Eleventh Amendment).

Regarding a monetary damages claim against Warden Krupar, Caldwell hasn't provided sufficient information in his complaint to plausibly suggest the Warden can be held liable in his individual capacity. While there is enough detail in the complaint to infer that the risk of self-harm and his suicidal tendencies are serious enough to satisfy the objective prong of the analysis, *see Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021) ("The risk of suicide is a grave one, not one that today's society chooses to tolerate.") (internal quotation marks and citation omitted), Caldwell has not adequately alleged that Warden Krupar subjectively knew of such a risk and intentionally disregarded it. *See id*. at 566 ("It is not enough to show that prison officials *should have been* aware of the risk. A defendant is not liable where she was not alerted to the likelihood of the risk of death by suicide.") (cleaned up, emphasis in original). Although Caldwell claims there have been no mental health staff at ISP for the last four to six months, ECF 1 at 3, he doesn't allege Warden Krupar—who only recently became ISP's warden in September 2026—knew about Caldwell's specific issues and has failed to assist him. He doesn't describe a single instance in which he (or someone else) informed Warden Krupar that Caldwell needed care for his worsening psychiatric symptoms. In fact, he admits the Warden recently ensured that staff began performing routine checks on the inmates and submitting details about their condition to mental

health staff "down state."[1] *Id.* Based on these facts, I can't conclude Caldwell has stated a plausible claim of deliberate indifference against Warden Krupar. *See Quinn*, 8 F.4th at 569 (acknowledging that "[m]ental health is notoriously difficult to assess and treat" but finding that the plaintiff didn't tie the individual defendants to specific Eighth Amendment violations as needed in order to proceed); *see also Moderson v. City of Neenah*, 137 F.4th 611, 617 (7th Cir. 2025) ("A defendant cannot be held liable for a constitutional violation if she did not cause or participate in the alleged violation.").

Caldwell also hints at a request for injunctive relief—he seeks better care for his serious mental health issues including severe depression, suicidal ideations and his history of self-harm and suicide attempts. ECF 1 at 2. He claims his condition has worsened over the last six months and that he is "worried" for his life. *Id.* at 3. Although his allegations are somewhat sparse, I will give him the benefit of all reasonable inferences at this early stage and allow him to proceed against the Warden in his official capacity to ensure he is being provided with constitutionally adequate mental health treatment for the specific issues described above. *See Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (finding warden of a correctional facility has both the authority and the responsibility to ensure inmates are housed in conditions that comport with the Eighth Amendment). Caldwell is reminded, however, that he is not entitled to demand specific medical care, and any relief must be narrowly drawn. *Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012) (Prison Litigation Reform Act mandates that "remedial

---

[1] I note there is no constitutional requirement that mental healthcare providers be located onsite—these days, it's not uncommon for mental health visits to be conducted via video conference, both in prison settings and within the medical community generally.

injunctive relief must be narrowly drawn, extend no further than necessary to correct the violation of the Federal right, and use the least intrusive means necessary to correct the violation of the Federal right.") (internal quotation marks, brackets, and citations omitted).

Accordingly:

(1) Eddie Caldwell is GRANTED leave to proceed against Warden Krupar in his official capacity on a permanent injunctive relief claim to ensure he is provided with constitutionally adequate mental health care for his severe depression and suicidal ideations to comport with the Eighth Amendment;

(2) All other claims are DISMISSED;

(3) The Indiana State Prison and Warden Krupar in his individual capacity are DISMISSED;

(4) The clerk is DIRECTED, under 28 U.S.C. § 1915(d), to request Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Warden Krupar at the Indiana Department of Correction, with a copy of this order and the complaint (ECF 1); and

(5) Warden Krupar is ORDERED, under 42 U.S.C. § 1997e(g)(2), to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on November 19, 2026.

/s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT